ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| JM ADVISORY GROUP, LLC<br>Peticionario<br><br>v.<br><br>MUNICIPIO DE RÍO GRANDE, REP. POR SU ALCALDE HON. ÁNGEL B. GONZÁLEZ DAMUDT<br>Recurrido | KLAN202500204 | Recurso de *Apelación* acogido como *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Fajardo<br><br>Caso Número: RG2023CV00586<br><br>Sobre: Cobro de dinero-Ordinario |
| --- | --- | --- |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y la Juez Barresi Ramos

Rivera Marchand, Jueza Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 8 de mayo de 2025.

Comparece ante nos, JM Advisory Group, LLC (JM o peticionario) y solicita que revoquemos la *Sentencia Sumaria* que el Tribunal de Primera Instancia, Sala Superior de Fajardo (TPI o foro primario) notificó, el 22 de noviembre de 2024. En el referido dictamen, el foro primario declaró no ha lugar la *Moción en Solicitud de Sentencia Sumaria* interpuesta por el peticionario y ha lugar el petitorio sumario que instó el Municipio de Río Grande, representado por su Alcalde, Ángel B. González Damudt (Municipio o recurrido).

De otra parte, y tomando en consideración que el dictamen que JM interesa revisar únicamente atendió los petitorios sumarios de ambas partes, sin adjudicar propiamente la *Demanda* y la reconvención pendientes ante sí, acogemos el recurso de epígrafe como un *certiorari.* Ante ello conservaremos el número alfanumérico asignado para propósitos administrativos.

Número Identificador

SEN2025_____

Por los fundamentos que exponemos a continuación, expedimos el auto de *certiorari* y confirmamos el dictamen recurrido.

## I.

La presente causa inició cuando JM incoó una *Demanda* en contra del Municipio sobre incumplimiento de contrato y cobro de dinero.[1] Según surge de las alegaciones, el Municipio suscribió un contrato de servicios profesionales con JM, el 15 de octubre de 2021,[2] con el fin de que este realizara gestiones de cobro de las deudas a las cuentas por cobrar del Municipio. Se colige además que, el Municipio se obligó a pagar a JM por contingencia un 10% de los recaudos obtenidos. JM expuso que, a pesar de cumplir con sus obligaciones contractuales, el Municipio no realizó el pago por sus servicios. Añadió que, tras realizar gestiones e interpelaciones infructuosas con el propósito de cobrar lo adeudado, instó el pleito de epígrafe. En respuesta al presunto incumplimiento de contrato, JM reclamó al Municipio el pago de $297,353.77 por concepto de los servicios prestados.

En reacción, el Municipio acreditó su alegación responsiva junto a una reconvención. En síntesis, adujo que, el 19 de julio de 2021, la Oficina de Ética Gubernamental (OEG) concluyó que el Presidente de JM, el señor Jorge L. Márquez Pérez (ex alcalde del Municipio de Maunabo) no podría asociarse o contratar con RS Consulting Services, Inc. durante el año siguiente al 31 de diciembre de 2021, cuando cesó como alcalde del Municipio de Maunabo. Elaboró que, el señor Márquez Pérez también fue miembro de la Junta de Gobierno del Centro de Recaudación de Ingresos Municipales (CRIM). Producto de lo anterior, el señor Márquez Pérez estaba impedido de intervenir o asesorar a una entidad pública en

---

[1] Apéndice, págs. 24-27.
[2] El contrato fue enmendado el 24 de mayo de 2022.

cuanto al CRIM, durante los dos (2) años siguientes a la fecha en que cesó sus funciones.

Cabe señalar que, el señor Márquez Pérez creó la empresa JM y suscribió el contrato con el Municipio con posterioridad a la notificación de la referida opinión de la OEG. Fundamentado en lo anterior, el Municipio adujo que el contrato suscrito resulta nulo, por lo que, procede la devolución de los fondos pagados a JM con anterioridad al pleito.

En su *Contestación a Reconvención,* JM indicó que ha cumplido con todas las leyes y reglamentos que rigen la contratación con el Municipio. En particular, indicó que, el señor Márquez Pérez -en su carácter personal- consultó a la OEG, el 9 de junio de 2021, para aclarar dudas sobre si procedía su asociación con la firma RS Consulting Services, Inc. para ofrecer servicios de cobro de deudas municipales. Indicó que, conforme a la opinión de la OEG del 19 de julio de 2021, no se asoció a RS Consulting Services, Inc. y estableció su propia corporación JM Advisory Group, LLC.

JM destacó que, durante la vigencia del contrato con el Municipio, el señor Márquez Pérez no compareció ante el CRIM. Resaltó que su gestión como alcalde fue en el Municipio de Maunabo, por lo que los límites de sus servicios corresponden a dicho Municipio y no se extienden a los demás entes municipales. Por todo ello, negó lo expuesto en la *Contestación a la Demanda y Reconvención.*

Así las cosas, JM instó una *Moción en Solicitud de Sentencia Sumaria* en la cual presentó 14 propuestas de hechos incontrovertidos.[3] Por su parte, el Municipio se opuso al referido

---

[3] Apéndice, págs. 83-154. Junto a su petitorio incluyó los siguientes documentos: Exhibit I-Certificado de Organización; Exhibit II-Certificado de Registro de Comerciante; Exhibit III-Certificado de Número Patronal; Exhibit IV-Contrato de Servicios Profesionales suscrito por Ángel B. González Damudt y Jorge L. Márquez Pérez; Exhibit V-Enmienda a Contrato de Servicios Profesionales; Exhibit VI-Facturas por Servicios Profesionales de diciembre de 2021; Exhibit VII-Carta suscrita por la Lcda. Carmen Márquez Pérez del 6 de diciembre de 2022; Exhibit

petitorio sumario y presentó su propia solicitud de sentencia sumaria.[4] En la referida oposición, el Municipio admitió los hechos propuestos por JM (números 6, 7, 8, 9, 10, 11, 12 y 13) como incontrovertidos. De otra parte, propuso 19 hechos adicionales que, a su entender, no están en controversia. Razonó que, le corresponde al TPI atender las siguientes interrogantes:

   a. Si el contrato 2022-000099, es nulo por haberse suscrito antes de transcu[rr]ir la prohibición de dos (2) años que impone el Artículo 4.6 de la Ley de Ética Gubernamental.
   b. Si el Municipio de Río Grande viene obligado a pagarle al demandante las facturas pendientes, generadas por un contrato otorg[a]do en periodo de prohibición.
   c. Si el demandante tiene que devolverle al Municipio de Río Grande los $12,359.07, en virtud del Contrato 2022-000099, a pesar de su nulidad.[5]

JM replicó y destacó que era falso que el señor Jorge L. Márquez Pérez fuera Alcalde de Río Grande hasta el 31 de diciembre de 2020.[6] Aseguró que este dirigía la Alcaldía de Maunabo hasta dicha fecha.

Evaluado lo anterior, el TPI consignó los siguientes como hechos incontrovertidos:

   1. El Sr. Jorge L. Márquez Pérez fue Alcalde del Municipio de Maunabo hasta el 31 de diciembre de 2020.
   2. El Sr. Jorge L. Márquez Pérez fue Miembro de la Junta de Alcaldes del Centro de Recaudación de Ingresos Municipales (CRIM).
   3. El 9 de junio de 2021 el Sr. Jorge L. Márquez Pérez presentó una Consulta Externa ante la Oficina de Ética Gubernamental, identificada como CE-22-025, para que le aclararan si podía asociarse con la firma de consultoría RS Consulting Services, Inc. "para brindar a los municipios servicios de cobros de deudas por concepto de contribuciones sobre la propiedad mueble e inmueble".
   4. El Sr. Jorge L. Márquez Pérez realizó la Consulta CE-22-025 debido a que RS Consulting Services, Inc. había tenido contratos con el Municipio de Maunabo, mientras éste había ejercido como su Alcalde y como miembro de la Junta de Alcaldes del CRIM.

---

VIII- Carta suscrita por la Lcda. Carmen Márquez Pérez del 11 de mayo de 2023; Exhibit IX-Correo electrónico del 9 de junio de 2021 enviado por Jorge Márquez Pérez; Exhibit X- Correo electrónico del 21 de junio de 2021 enviado por la Oficina de Ética Gubernamental; Exhibit XI- Carta del 19 de julio de 2021 enviado por la Oficina de Ética Gubernamental; Exhibit XII-Carta del 31 de agosto de 2022 enviado por la Oficina de Ética Gubernamental; Exhibit XIII-Factura por Servicios Profesionales de noviembre de 2021 recibido el 14 de enero de 2022; y Exhibit XIV-Juramento suscrito por Jorge L. Márquez Pérez.

[4] Apéndice, págs. 156-174. Con su oposición, incluyó lo siguiente: Anejo 1-Certificado de Organización de una Compañía de Responsabilidad Limitada y Anejo 2-Carta del 19 de julio de 2021 suscrita por la Oficina de Ética Gubernamental.

[5] Apéndice, pág. 160.

[6] Apéndice, págs. 176-177.

5. El 19 de julio de 2021 la Oficina de Ética Gubernamental expidió su opinión a la Consulta CE-22-025.

6. En cuanto a RS Consulting Services, Inc., la OEG concluyó que el Ex Alcalde Jorge L. Márquez Pérez no podría asociarse, ni contratar con ésta durante un (1) año siguiente a la fecha en que éste había cesado sus funciones como Alcalde, o sea, hasta el 31 de diciembre de 2021.

7. La OEG también concluyó el Sr. Jorge L. Márquez Pérez "no podrá comparecer ante el CRIM, o ante cualquier entidad del Municipio, a ofrecer información, intervenir, cooperar, asesorar en forma alguna o representar, directa o indirectamente, a una persona privada, negocio o entidad pública durante los dos años siguientes a la culminación de su incumbencia como Alcalde".

8. La OEG recordó al Sr. Jorge L. Márquez Pérez que "siempre tendrá que abstenerse de ofrecer información o de asesorar en forma alguna a cliente o compañía sobre los asuntos en los cuales usted intervino mientras se desempeñó como Alcalde y como parte de la Junta de Alcaldes del CRIM y nunca podrá utilizar información confidencial o privilegiada adquirida en el ejercicio de sus cargos públicos para enriquecer su patrimonio o el de un tercero. Estas prohibiciones son de carácter permanente".

9. El 15 de agosto de 2021 el Ex – Alcalde de Maunabo, Jorge L. Márquez Pérez, organizó JM Advisory Group, LLC, compañía de responsabilidad limitada, registrada en el Departamento de Estado bajo el número 470920.

10. El Sr. Jorge L. Márquez Pérez es la única Persona Autorizada identificada en el Certificado de Incorporación de JM Advisory Group, LLC.

11. El 15 de octubre de 2021, el MUNICIPIO DE RÍO GRANDE, representado por su Alcalde, Honorable Ángel B. González Damudt, suscribió el CONTRATO DE SERVICIOS PROFESIONALES Núm. 2022-000099 con JM ADVISORY GROUP, LLC, quien compareció representada por su Administrador, Jorge L Márquez Pérez.

12. El Contrato Núm. 2022-000099 tenía una vigencia del 18 de octubre de 2021 al 18 de octubre de 2022; y, una cantidad mínima de $5,000.00.

13. Para la fecha en que se firmó el Contrato Núm. 2022-000099, no había transcurrido un (1) año de la culminación de la incumbencia del Sr. Jorge L. Márquez Pérez como Alcalde del Municipio de Maunabo.

14. Para la fecha en que se firmó el Contrato Núm. 2022-000099, no había transcurrido un (1) año de la culminación de la incumbencia del Sr. Jorge L. Márquez Pérez como miembro de la Junta de Alcaldes del CRIM.

15. El Contrato Núm. 2022-000099 fue enmendado el 24 de mayo de 2022, a los fines de adicionar la cantidad de $200,000. El contrato enmendado fue identificado con el número 2022-000099-A.

16. El Contrato Núm. 2022-000099 y su enmienda fueron inscritos en el Registro de Contratos de la Oficina del Contralor.

17. Conforme a las cláusulas y condiciones, PRIMERA, página una del Contrato Núm. 2022- 000099, inciso uno (1): JM ADVISORY GROUP, LLC se obligó a "realizar las gestiones de cobro de deudas a cuentas por cobrar: Contribuciones sobre la Propiedad Mueble e Inmueble…"

18. La cláusula SEGUNDA del Contrato Núm. Núm. [sic] 2022-000099 establece lo siguiente:

"SEGUNDA: La PRIMERA PARTE pagará a la SEGUNDA PARTE por contingencia la cantidad de 10% de todos los recaudos obtenidos cargados a la partida 02-03-04-

91.11 Servicios Profesionales con ID: PAT04001. En caso de aprobarse cualquier Medida Legislativa u otro mecanismo que permita a cualquier deudor acogerse, pero en cuyo caso El Contratado ha hecho la gestión de cobro, se honrará el pago según los honorarios establecidos en el contrato. Previo a realizar cualquier pago, la cantidad a ser pagada se calculará en base al importe moroso recaudado, mediante prueba del CRIM o del Municipio, según donde sea recibido el pago, en cuanto a que el contribuyente pagó en dicha agencia. Los cobros mediante acuerdo de pago con el contribuyente (formal o informal) que se recauden por el CRIM o por el Municipio, como resultado de la gestión de LA SEGUNDA PARTE (lo que tendrá que probar la SEGUNDA PARTE), incluyendo el pronto pago subsiguiente, estarán sujetos al pago por servicios. Por esta razón el contrato estará enmendado hasta la fecha de vigencia del Plan de Pago. Para cumplir con la Carta Circular de la Oficina del Contralor OC-l9-11 este contrato se estima en una cuantía mínima de cinco mil dólares ($5,000.00). Sin embargo, se aclara que el Municipio de Río Grande no realizará pagos sino hasta que se vayan recibiendo pagos de los contribuyentes deudores."

19. JM ADVISORY GROUP, LLC rindió los servicios a los que se refiere el Contrato Núm. 2022- 000099.

20. El Municipio de Río Grande se benefició económicamente de los servicios prestados por JM ADVISORY GROUP, LLC.

21. El Municipio de Río Grande nunca presentó queja alguna en cuanto a los servicios prestados por JM ADVISORY GROUP, LLC.

22. El 21 de diciembre de 2021 JM ADVISORY GROUP, LLC entregó al Municipio de Río Grande la FACTURA 2021-106 por servicios rendidos, en la cual requirió el pago de $12,359.07, equivalentes al 10% de los $123,590.69 pagados por contribuyentes morosos. El Municipio de Río Grande pagó esta factura a JM ADVISORY GROUP, LLC.

23. JM ADVISORY GROUP, LLC notificó facturas adicionales al Municipio de Río Grande, las cuales no fueron pagadas.

24. Ante la falta de pago, JM ADVISORY GROUP, LLC realizó gestiones extrajudiciales reclamando el pago, gestiones verbales y escritos, incluyendo el requerimiento legal de pago y esperó por el pago, dando seguimiento; resultando infructuosas las gestiones.

25. A la fecha de la radicación de la demanda de autos, el Municipio de Río Grande no había pagado lo reclamado a la parte demandante.

26. El Municipio de Río Grande nunca pagó a la parte demandante la suma de $297,353.77.

27. La deuda reclamada por la parte demandante corresponde a las siguientes facturas:
a. FACTURA 2022 – 111, 1/17/2022, correspondiente DICIEMBRE 2021, por $92,819.11
b. FACTURA 2022 – 115, 2/14/2022, corresponde a ENERO de 2022, por $131,972.87
c. FACTURA 2022 – 121, 3/07/2022, corresponde a FEBRERO de 2022, por $56,780.92
d. FACTURA 2022 – 126, 4/07/2022, corresponde a MARZO de 2022, por $5,026.14
e. FACTURA 2022 – 132, 5/26/2022, corresponde a ABRIL de 2022, por $10,754.73.

28. Las facturas relacionadas en el hecho anterior nunca fueron objetadas por el Municipio de Río Grande.

29. Las facturas relacionadas en el hecho número veintisiete (27) nunca fueron pagadas por el Municipio de Río Grande.

30. El Municipio de Río Grande se negó a pagar indicando que JM ADVISORY GROUP, LLC estaba impedida de contratar con el municipio, según su interpretación de la opinión emitida por la Oficina de Ética Gubernamental (OEG) a la Consulta CE-22-025.[7]

En su análisis, el foro primario destacó lo siguiente:

En este caso, la fecha del contrato en controversia y las fechas de las facturas cobradas, hace innecesario que este Tribunal tenga que abordar las prohibiciones absolutas fijadas en los incisos (d) al (e) del Artículo 4.6 y que nos requerirían resolver si el Ex Alcalde utilizó o no información confidencial o privilegiada adquirida en el ejercicio de sus cargos públicos para enriquecer su patrimonio o el de un tercero.

Lo cierto es que el Ex Alcalde, Jorge L. Márquez Pérez terminó su incumbencia como Alcalde [el] Municipio de Maunabo el 30 de diciembre de 2020, fecha en que también cesó como miembro de la Junta del Centro de Recaudación de Ingresos Municipales (CRIM). En ese momento, se activó la prohibición temporal de dos (2) años que establece el Artículo 4.6 de la Ley de Ética Gubernamental y que le impedía ofrecer información, intervenir, cooperar, asesorar en forma alguna o representar, directa o indirectamente a una persona privada, negocio o entidad pública, sobre los asuntos en los que intervino mientras trabajó como servidor público. La referida prohibición vencía el 31 de diciembre de 2022.

Evidentemente, para la fecha en que se suscribió el Contrato de Servicios Núm. 2022-000099, para el cobro de cuentas por cobrar, por concepto de deudas de contribuciones sobre la propiedad mueble e inmueble, todavía se encontraba vigente la prohibición a la cual estaba sujeta el Ex Alcalde Jorge L. Márquez Pérez, representante y administrador de JM ADVISORY, LLC. Dicha prohibición se encontraba activa a la fecha en que se enmendó el contrato y también durante las fechas de todas las facturas que rindió JM ADVISORY, incluyendo la que le pagó el Municipio de Río Grande.[8]

Basado en lo antes concluyó que, como cuestión de derecho, no procedía ningún remedio en equidad a favor de JM. En su lugar, resolvió que, JM debía reembolsar al Municipio todos los fondos municipales sufragados como parte de la ejecución del Contrato de Servicios Núm. 2022-000099 y su enmienda. Oportunamente, JM solicitó reconsideración, la cual el TPI denegó.[9]

Aun insatisfecho, JM acude ante nos y señala la comisión de los siguientes errores:

Erró el Tribunal de Primera Instancia al declarar nulo el contrato suscrito entre JM Advisory Group, LLC,

---

[7] Apéndice, págs. 3-6.
[8] Apéndice, pág. 14.
[9] Apéndice, págs. 17-22.

representado por el ex-alcalde del Municipio de Maunabo y ex-Presidente de la Junta de Gobierno del Centro de Recaudación de Ingresos Municipales con el Municipio de Río Grande, por violación a la Ley de Ética Gubernamental, Artículo 4.6, 3 LPRA 1185 7e, cuando no están presente[s] los elementos para tal violación.

Erró el Tribunal de Primera Instancia al declarar nulo el referido contrato por violar el Artículo 4.6 (b) de la Ley de Ética Gubernamental por haberse suscrito dentro de la prohibición de dos años del Artículo 4.6 (b), supra, sin considerar las circunstancias que tienen que darse para que aplique tal violación.

Erró el Tribunal de Primera Instancia al determinar que se violó el Artículo 4.6 (b), de la Ley de Ética Gubernamental, al no determinar que para violar tal inciso las acciones tienen que ocurrir ante la agencia para la cual laboró el ex-servidor público.

Erró el Tribunal de Primera Instancia al no distinguir la premisa utilizada por la Oficina de Ética Gubernamental para contestar la consulta realizada por el ex-servidor público, [(]contratación directa con el CRIM), que es distinta a la situación de hechos de este caso (Contratación con el Municipio de Río Grande).

Erró el Tribunal de Primera Instancia al considerar nulo el referido contrato por violación al Artículo 4.6, supra, cuando la actividad bajo contrato es para realizar gestiones de cobro a los deudores morosos del Municipio de Río Grande, sobre la contribución de propiedad inmueble, por haberse suscrito el contrato dentro del período de prohibición de dos años del Artículo 4.6 (b) de la Ley de Ética Gubernamental; deber que cae dentro de las facultades del municipio y que el contrato no es uno con el Centro de Recaudaciones de Ingresos Municipales (CRIM).

Erró el Tribunal de Primera Instancia al no considerar que las funciones del ex-miembro de la Junta del CRIM, caen bajo las excepciones del Artículo 1.2 (e) de la Ley de Ética Gubernamental.

Erró el Tribunal de Primera Instancia y cometió error manifiesto en derecho y se desvió de claros preceptos de derecho en la sentencia emitida.

El Tribunal adjudicó como hecho once (11) "que la contratación es entre el Municipio de Río Grande y la parte demandante" y que la parte demandante se obligó a "realizar las gestiones de cobro de deudas a cuentas por cobrar: contribuciones sobre la Propiedad Mueble e Inmueble..."; sin embargo, luego aplica la prohibición del Artículo 4.6 (a) (b) de la Ley de Ética Gubernamental como si se tratara de una contratación con el CRIM. (Énfasis suprimido.)

En cumplimiento con nuestra *Resolución,* emitida el 12 de marzo de 2025, el recurrido comparece mediante el *Alegato del Municipio de Río Grande.*

**II.**

A. **Sentencia Sumaria**

El mecanismo de sentencia sumaria está codificado en la Regla 36 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 36. *Jiménez Soto y otros v. Carolina Catering Corp. y otros,* 2025 TSPR 3, resuelto el 14 de enero de 2025. Cabe señalar que, esta herramienta permite a los tribunales disponer, parcial o totalmente, de litigios civiles en aquellas situaciones en las cuales no existe duda sobre los hechos esenciales y se cuenta con la evidencia necesaria, de manera que, solo resta aplicar el derecho. *Íd.*; *Consejo de Titulares del Condominio Millennium v. Rocca Development Corp., et als.*, 2025 TSPR 6, resuelto el 15 de enero de 2025. Este cauce sumario -invocable tanto por la parte reclamante como por quien se defiende de una reclamación- resulta beneficioso para el tribunal y para las partes, pues agiliza el proceso judicial mientras, simultáneamente, provee a los litigantes un mecanismo procesal encaminado a alcanzar un remedio justo, rápido y económico. *Jiménez Soto y otros v. Carolina Catering Corp. y otros,* supra.

Como se sabe, procede dictar sentencia sumaria si se desprende de las alegaciones, deposiciones, declaraciones juradas, contestaciones a interrogatorios, admisiones ofrecidas, entre otros, que no existe controversia real sustancial sobre un hecho esencial y pertinente, y siempre que el derecho aplicable así lo justifique. *Consejo de Titulares del Condominio Millennium v. Rocca Development Corp., et als.*, supra. De manera que, en aras de prevalecer en una reclamación, la parte promovente debe presentar prueba incontrovertible sobre todos los elementos indispensables de su causa de acción. *Banco Popular de Puerto Rico v. Cable Media of Puerto Rico, Inc. y otro,* 2025 TSPR 1, resuelto el 7 de enero de 2025.

Nuestro ordenamiento civil y su jurisprudencia interpretativa impone unos requisitos de forma con los cuales hay que cumplir al momento de presentar una solicitud de sentencia sumaria, a saber: (1) una exposición breve de las alegaciones de las partes; (2) los

asuntos litigiosos o en controversia; (3) la causa de acción sobre la cual se solicita la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales se debe dictar la sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. *Oriental Bank v. Caballero García,* 212 DPR 671, 679 (2023). Véase, además, la Regla 36.3 de las Reglas de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3. Si el promovente de la moción incumple con estos requisitos, "el tribunal no estará obligado a considerar su pedido". *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 111 (2015). Además, el promovente de una solicitud de sentencia sumaria ha de acompañar su petitorio con prueba de la cual surja preponderantemente la ausencia de controversias sobre los hechos medulares del caso. *Birriel Colón v. Econo y otro,* 213 DPR 80 (2023). Es un hecho medular el que puede afectar el resultado de la reclamación, conforme al derecho sustantivo aplicable. *Banco Popular de Puerto Rico v. Cable Media of Puerto Rico, Inc. y otro,* supra.

Cabe destacar que, la parte que desafía una moción de sentencia sumaria no puede descansar en las aseveraciones o negaciones consignadas en su alegación. *Íd.*; *León Torres v. Rivera Lebrón,* 204 DPR 20, 43 (2020). Por el contrario, la Regla 36.3(c) de las Reglas de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3(c), obliga a quien se opone a que se declare con lugar esta solicitud a enfrentar la moción de su adversario de forma tan detallada y específica como lo ha hecho el promovente puesto que, si incumple, corre el riesgo

de que se dicte sentencia sumaria en su contra, si la misma procede en derecho. *León Torres v. Rivera Lebrón,* supra. A esos efectos, deberá sustentar con evidencia sustancial los hechos materiales que entiende están en disputa. *Banco Popular de Puerto Rico v. Cable Media of Puerto Rico, Inc. y otro,* supra.

Por ello, en la oposición a una solicitud de sentencia sumaria, el promovido debe detallar aquellos hechos propuestos que pretende controvertir y, si así lo desea, someter hechos materiales adicionales que alega no están en disputa y que impiden que se dicte sentencia sumaria en su contra. *León Torres v. Rivera Lebrón,* supra. Claro está, para cada uno de estos supuestos, deberá hacer referencia a la prueba específica que sostiene su posición, según exigido por la antes citada Regla 36.3 de Procedimiento Civil. *Íd.* En otras palabras, la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa. *Íd.*

Al atender la solicitud, el Tribunal deberá asumir como ciertos los hechos no controvertidos que se encuentren sustentados por los documentos presentados por el promovente. *E.L.A. v. Cole,* 164 DPR 608, 626 (2005). Toda inferencia razonable que pueda surgir de los hechos y de los documentos se debe interpretar en contra de quien solicita la sentencia sumaria, pues sólo procede si bajo ningún supuesto de hechos prevalece el promovido. *Íd.,* pág. 625. Además, al evaluar los méritos de una solicitud de sentencia sumaria, el juzgador debe actuar guiado por la prudencia y ser consciente en todo momento que su determinación puede conllevar el que se prive a una de las partes de su "día en corte", componente integral del debido proceso de ley. *León Torres v. Rivera Lebrón,* supra*,* pág. 44.

Sin embargo, la sentencia sumaria generalmente no procederá cuando existan controversias sobre hechos esenciales materiales, o si la controversia del caso está basada en elementos

subjetivos como intención, propósitos mentales, negligencia o credibilidad. *Cruz, López v. Casa Bella y otros,* 213 DPR 980 (2024). Además, existen casos que no se deben resolver mediante sentencia sumaria porque resulta difícil reunir la verdad de los hechos mediante declaraciones juradas o deposiciones. *Jusino et als. v. Walgreens,* 155 DPR 560, 579 (2001). De igual modo, no es apropiado resolver por la vía sumaria "casos complejos o casos que involucren cuestiones de interés público". *Íd.*

El Tribunal Supremo de Puerto Rico ha discutido los criterios que este Tribunal de Apelaciones debe considerar al momento de revisar una sentencia dictada sumariamente por el foro de instancia. *Roldán Flores v. M. Cuebas et al.,* 199 DPR 664, 679-680 (2018); *Meléndez González et al. v. M. Cuebas,* supra, págs. 118-119. En particular, nuestro más Alto Foro señaló que:

> [...] el Tribunal de Apelaciones debe: (1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra,* y la jurisprudencia le exigen al foro primario; (2) revisar que tanto la Moción de Sentencia Sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36; (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos, y (4) de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia. *Roldán Flores v. M. Cuebas et al.,* supra, pág. 679.

Conforme a lo anterior, los foros apelativos nos encontramos en la misma posición que el Tribunal de Primera Instancia y utilizamos los mismos criterios para evaluar la procedencia de una sentencia sumaria. *Banco Popular de Puerto Rico v. Cable Media of Puerto Rico, Inc. y otro,* supra. Por ello, nuestra revisión es una *de novo,* y nuestro análisis debe regirse por las disposiciones de la Regla 36 de Procedimiento Civil, *supra,* y su jurisprudencia interpretativa. *González Santiago v. Baxter Healthcare,* 202 DPR

281, 291 (2019). De esta manera, si entendemos que los hechos materiales realmente están incontrovertidos, debemos revisar *de novo* si el foro primario aplicó correctamente el derecho. *Acevedo y otros v. Depto Hacienda y otros,* 212 DPR 335, 352 (2023).

**B. Código Municipal de Puerto Rico**

La Ley Núm. 107-2020, Código Municipal de Puerto Rico, 21 LPRA secs. 7001 *et seq.,* se aprobó con el propósito de integrar, organizar y actualizar la legislación que regula la organización, administración y funcionamiento de los municipios. Al mismo tiempo, añade modelos procesales dirigidos a otorgarles mayor autonomía.

Con respecto a la contratación municipal, el Tribunal Supremo ha expresado que, es necesaria la aplicación de normas restrictivas que sirvan de control sobre el desembolso de fondos públicos y que promuevan la rectitud en la administración pública, asunto revestido del más alto interés público. *Vicar Builders v. ELA et al.,* 192 DPR 256 (2015). Cónsono con lo anterior, nuestro más Alto Foro ha reiterado que, el propósito de la legislación que regula "la realización de obras y la adquisición de bienes y **servicios** para el Estado, sus agencias y dependencias, y **los municipios**, es la protección de los intereses y recursos fiscales del pueblo". *Johnson & Johnson v. Mun. de San de Juan,* 172 DPR 840, 852 (2007).

La obligación del Estado derivada de una contratación municipal surge únicamente cuando existe un contrato en virtud de un compromiso legalmente válido. *Vicar Builders v. ELA et al.,* supra. A esos efectos, un contrato entre una parte privada y el Estado que no cumpla con la ley será nulo e inexistente. *Rodríguez Ramos et al. v. ELA et al.,* 190 DPR 448, 456-457 (2014). Aquella parte privada que no se asegure del cumplimiento de la ley al contratar con los municipios se arriesga a asumir la responsabilidad por sus

pérdidas. *Quest Diagnostics v. Mun. San Juan,* 175 DPR 994, 1002 (2009).

### C. Ley Núm. 1-2012

La Ley Núm. 1-2012, conocida como la Ley de Ética Gubernamental de Puerto Rico de 2011 (Ley de Ética Gubernamental), 3 LPRA sec. 1854 *et seq.,* se promulgó con el propósito de renovar y reafirmar la función preventiva y fiscalizadora de la OEG. En lo pertinente al caso de marras, en su Artículo 4.6, 3 LPRA sec. 1857e, establece cuáles son las restricciones que regulan las actuaciones de los ex servidores públicos, a saber:

> (a) Un ex servidor público no puede ofrecer información, intervenir, cooperar, asesorar en forma alguna o representar en cualquier capacidad, directa o indirectamente, a una persona privada, negocio o entidad pública, sobre aquellas acciones oficiales o asuntos en los que intervino mientras trabajó como servidor público.
>
> (b) Un ex servidor público no puede, durante los dos (2) años siguientes a la fecha de terminación de su empleo gubernamental, ofrecer información, intervenir, cooperar, asesorar en forma alguna o representar, directa o indirectamente, a una persona privada, negocio o entidad pública, ante la agencia para la que laboró.
>
> (c) Un ex servidor público no puede, durante el año siguiente a la fecha de terminación de su empleo gubernamental, ocupar un cargo, tener interés pecuniario o contratar, directa o indirectamente, con una agencia, persona privada o negocio, sobre el que haya ejercido una acción oficial durante el año anterior a la terminación de su empleo. Se excluye de esta prohibición los contratos intergubernamentales. Los gobiernos municipales, también estarán excluidos del alcance de esta normativa, por lo que podrán contratar, en una jornada parcial de trabajo, a los ex-servidores públicos retirados de su municipalidad, condicionado a que hayan cesado sus funciones para acogerse al retiro por edad o años de servicio, sin sujeción a los términos dispuestos en esta ley.
>
> Esta prohibición no aplica al ex servidor público interesado en regresar al sector no gubernamental, siempre y cuando sus acciones oficiales no hubieran favorecido preferentemente a la entidad en la que se propone ocupar un cargo, tener interés pecuniario o contratar. Para que opere esta excepción, la Dirección Ejecutiva evaluará la situación con anterioridad a la ocupación del cargo, a la tenencia de un interés pecuniario o al otorgamiento de un contrato.
>
> [...]

### III.

En el recurso ante nos, el peticionario impugna el dictamen del foro primario mediante el cual declaró sin lugar su petitorio

sumario y con lugar la solicitud de sentencia sumaria del Municipio. Discute que, durante su incumbencia como Alcalde del Municipio de Maunabo y como miembro de la Junta de Gobierno del CRIM, no tomó acción oficial alguna específica en torno a las cuentas morosas del Municipio de Río Grande. Asegura que su participación e intervención dentro de la Junta de Gobierno del CRIM era de naturaleza colectiva y general, para promulgar normas, reglamentación y asuntos de interés general. Lo antes, en su intento por establecer que su intervención o participación está exceptuada de la prohibición del Artículo 4.6 de la Ley de Ética Gubernamental, *supra,* a tenor de la definición de "asunto" que dispone el Artículo 1.2 (e) de la referida ley, 3 LPRA sec. 1854 (e).[10] Añade que, nunca laboró para el Municipio de Río Grande ni contrató con el CRIM.

Según el peticionario, no se configuran los dos (2) requisitos que establece el Artículo 4.6 (b) de la Ley de Ética Gubernamental, *supra,* a saber: (1) que la acción contratada sea para implementarse ante la agencia para la cual laboró el ex servidor público; (2) que sea para beneficiar a un tercero. A su entender, no se configura el primer requisito toda vez que él trabajaba para el Municipio de Maunabo, contrató con el Municipio de Río Grande, sin efectuar pacto alguno con el CRIM, la agencia a cuya Junta perteneció. El peticionario abunda que, la gestión de cobro a la cual fue contratado será efectuada en cada contribuyente moroso para beneficio del Municipio de Río Grande, no de un tercero. Expone que, del contrato objeto de este litigio no surge que sus funciones guarden relación directa o indirecta con el CRIM. Lo antes, a los efectos de establecer

---

[10] El citado inciso (e) del Artículo 1.2 define "asunto" como: "[h]echo que involucra a partes específicas y en los que el servidor público participa, personal y sustancialmente, o que requiere de su decisión, aprobación, recomendación o investigación. No incluye la intervención o participación del servidor público en la promulgación de normas o reglamentos de aplicación general o de directrices e instrucciones abstractas que no aludan a situaciones particulares o a casos específicos."

que, no opera en este caso la prohibición de dos (2) años que dispone el citado inciso.

Sobre tales bases, el peticionario alega que el TPI incidió al denegar su petitorio sumario y al decretar la nulidad del *Contrato de Servicios Profesionales*, Contrato Núm.: 2022-000099, y de la *Enmienda a Contrato de Servicios Profesionales*, Enmienda Núm.: 2022-000099-A, suscritos entre las partes, con el efecto de que, no podrá recobrar del Municipio $297,353.77 por concepto de los servicios profesionales prestados.

En su alegato, el Municipio arguye que JM infringió el Artículo 4.6 de la Ley de Ética Gubernamental, *supra,* y, con ello, provocó la nulidad del contrato objeto de este pleito. Discute que, el peticionario suscribió el referido acuerdo y su enmienda dentro del periodo prohibido y pretende sobrepasar las prohibiciones de la Ley de Ética Gubernamental bajo la premisa de que contrató con el Municipio de Río Grande, no directamente con el CRIM.

Conforme a la normativa antes esbozada, para evaluar la determinación del foro primario, en cumplimiento con el deber que nos impone *Meléndez González et al. v. M. Cuebas*, supra, revisamos *de novo* ambos petitorios sumarios y los anejos que los acompañan. Ello, con el objetivo de evaluar si el foro primario actuó correctamente al declarar no ha lugar la *Moción en Solicitud de Sentencia Sumaria* que interpuso JM y con lugar el petitorio sumario del Municipio, bajo el fundamento de que son nulos los contratos objeto de este pleito.

Es norma reiterada que, los foros apelativos estamos en igual posición que el foro sentenciador al revisar un petitorio sumario. Nos corresponde inicialmente evaluar si las partes cumplieron con los requisitos de forma que establece la Regla 36 de Procedimiento Civil, *supra.* Efectuado el examen de rigor, constatamos que ambas partes cumplieron con las referidas formalidades. Superado lo anterior,

procedemos a realizar nuestro examen *de novo* del expediente, producto de lo cual, colegimos que el foro primario no incidió al declarar con lugar el petitorio sumario del Municipio y al declarar no ha lugar el instado por el peticionario. Resolvemos, además, que el TPI actuó dentro de los parámetros de razonabilidad al aplicar el derecho a la causa de epígrafe, en ausencia de controversias de hechos. Nos explicamos.

Recordemos que, en nuestra jurisdicción rige el principio de la autonomía contractual y *pacta sunt servanda.* Artículo 54 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 5421; *Cruz, López v. Casa Bella y otros,* 213 DPR 980 (2024). Es por ello, que, las partes pueden establecer los pactos, las cláusulas y las condiciones que tengan por convenientes, **siempre que no sean contrarias a las leyes, a la moral o al orden público.** Artículo 1232 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 9753; *Betancourt González v. Pastrana Santiago,* 200 DPR 169, 182 (2018). Entiéndase que, aquel negocio jurídico cuyo fin sea contrario a la ley, a la moral o al orden público, o sea lesivo a derechos de terceros, posee una causa ilícita y, por lo tanto, es nulo y no produce efecto jurídico alguno, independientemente de su naturaleza y de la importancia que tenga para los contratantes. Artículo 270 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 6141; *Blanco Matos v. Colón Mulero,* 200 DPR 398, 408 (2018).

Cabe puntualizar que, la respuesta de la OEG a la Consulta Externa CE-22-025, fechada el 19 de julio de 2021, fue previa a que el peticionario suscribiera el contrato objeto de este litigio. En ella, la OEG expresó, el peticionario "no podrá comparecer ante el CRIM, o ante cualquier otra entidad del Municipio [de Maunabo], a ofrecer información, intervenir, cooperar, asesorar en forma alguna o representar, directa o indirectamente, a una persona privada, negocio o entidad pública durante los dos años siguientes a la

culminación de su incumbencia como Alcalde." (Énfasis suprimido.)[11] Lo antes, a tenor del Artículo 4.6 (b) de la Ley de Ética Gubernamental, *supra,* y debido a que el peticionario fue miembro de la Junta de Gobierno del CRIM.[12]

Conforme a la normativa antes citada, el Artículo 4.6 (b) de la Ley de Ética Gubernamental, *supra,* prohíbe expresamente que el peticionario, como ex servidor público, realice ante el CRIM gestiones de cobro de deudas sobre cuentas por cobrar por concepto de contribuciones de propiedad mueble e inmueble, a favor del Municipio de Río Grande, durante los dos (2) años siguientes al 31 de diciembre de 2020, cuando dejó de formar parte de la Junta de Gobierno del CRIM. Coincidimos con el TPI en cuanto a que, las referidas gestiones de cobro son asuntos prohibidos por disposición de ley que no caen dentro de lo exceptuado por el Artículo 1.2 (e) de la Ley de Ética Gubernamental, *supra.*

A pesar de lo anterior y al cabo de varios meses, el 15 de octubre de 2021, el peticionario suscribió con el Municipio de Río Grande el *Contrato de Servicios Profesionales*, Contrato Núm.: 2022-000099, enmendado el 24 de mayo de 2022 a los fines de adicionar doscientos mil dólares ($200,000.00) al contrato. Surge de la primera cláusula del referido contrato que, el peticionario se comprometió a "[r]ealizar las gestiones de cobro de deudas a cuentas por cobrar: Contribuciones sobre la Propiedad Mueble e Inmueble".[13] Obsérvese que, esos mismos servicios son los que el peticionario consultó a la OEG si podía realizar, y cuya respuesta fue negativa.[14] La única diferencia es que, en la Consulta Externa

---

[11] Consulta CE-22-025. Apéndice, pág. 150.
[12] Cabe destacar que, la referida Junta de Gobierno está compuesta por once (11) miembros, nueve (9) de ellos son Alcaldes, y está a cargo de dirigir el CRIM. Artículo 7.004 de la Ley de Ética Gubernamental, 21 LPRA sec. 7953.
[13] Apéndice, pág. 108.
[14] Surge de la Consulta CE-22-025 que, el peticionario consultó "si se puede asociar con la firma *RS Consulting Services, Inc.* (Firma) para brindar a los municipios servicios de cobros de deudas por concepto de contribuciones sobre la propiedad mueble e inmueble." Apéndice, pág. 149.

CE-22-025, el peticionario se proponía a ofrecer tales servicios asociándose a *RS Consulting Services, Inc.*, pero desistió de lo antes y creó su propia empresa (JM) para ejecutar idénticas gestiones ante el CRIM.

Tal como dispuso la OEG en su pronunciamiento, la prohibición del Artículo 4.6 (b) de la Ley de Ética Gubernamental, *supra*, "pretende evitar que el ex servidor público utilice sus contactos, influencia[s] y el conocimiento interno de su anterior empleo para beneficiar a un tercero."[15] Según el peticionario, lo antes no aplica a estos hechos en la medida en que el Municipio de Río Grande es quien se beneficia de sus gestiones de cobro, sin este ser un tercero. No tiene razón. El citado precepto aplica a estos hechos en tanto y en cuanto, el señor Márquez Pérez -como ex servidor público- está impedido de utilizar sus contactos, influencias y conocimiento interno -derivado de sus funciones como Alcalde de Maunabo y como miembro de la Junta de Gobierno del CRIM- para ejercer gestiones de cobro de contribuciones de propiedad mueble e inmueble ante el CRIM, en beneficio de un tercero, en particular JM, como entidad jurídica separada del señor Márquez Pérez y quien devengará ingresos producto de tales gestiones.[16]

Evaluado lo anterior, el foro primario correctamente decretó sumariamente la nulidad del *Contrato de Servicios Profesionales*, Contrato Núm.: 2022-000099 y de la *Enmienda a Contrato de Servicios Profesionales*, Enmienda Núm.: 2022-000099-A. Resulta evidente que, los contratos objeto de este recurso son contrarios a la ley, la moral y al orden público, infringen el Artículo 4.6 (b) de la Ley de Ética Gubernamental y, por consiguiente, son nulos, tal cual lo dispuso el foro primario. Los errores señalados no se cometieron.

---

[15] Apéndice, pág. 150.

[16] Como se sabe, las corporaciones gozan de una personalidad jurídica distinta y separada a la de sus dueños. *Eagle Security v. Efrón Dorado et al.,* 211 DPR 70, 86 (2023).

**IV.**

Por los fundamentos antes expuestos y, toda vez que la determinación impugnada es interlocutoria, en la medida en que únicamente adjudicó los petitorios sumarios de ambas partes, expedimos el auto de *certiorari,* confirmamos el dictamen recurrido y devolvemos el asunto ante el foro primario para que dicte la sentencia correspondiente, mediante la adjudicación de la *Demanda* y la reconvención, conforme a lo aquí resuelto.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones